Your Honor, I'd like to reserve five minutes if I can. All right. And are you going to be solely arguing the case? I am. Okay. May it please the Court, my name is Mike Bothwell, and at Council table with me is Julie Bracker. We represent the whistleblower, relator Mary Cafasso in this appeal. Each ruling in the District Court should be overturned in this case to preserve this Court's precedent and those of the Supreme Court. The lower court also ignored numerous allegations and disputed facts favoring relator on summary judgment. The lower court's dismissal of the FCA claims on Rule 9b must be overturned because this Court has now joined the First, Fifth, Seventh, and Tenth Circuits in directly rejecting the lower court's claim-centric standard. The lower court also grafted requirements onto this Court's other standards and rejected binding precedent of this Court and the Supreme Court as well. For example, after finding protected activity nearly identical to that in Mendiondo and supported by Graham County, the lower court then required the plaintiff to prove a reporting of false claims or statements. It rejected Allison Engine and Bourseau by requiring false claims for A2 and A7 claims. The lower court rejected Bly McGee by requiring the pleading of damages. The lower court refused to follow this Court's precedent in Poland and the Poland line of cases by adding back in the exact standard that Poland had rejected. It refused to follow Desert Palace and Space Labs by ignoring all circumstantial evidence that contradicted the decision-maker's testimony. The lower court overly simplified the sub-H case by limiting its review to one set of one protected activity, one act of retaliation, and the date of November 2005. Because the lower court failed to consider other protected acts, other adverse employment actions, other managers' knowledge, and other time frames for knowledge, the opinion should be overturned. Even as to the issues that were considered, the court completely ignored that each of the material issues of fact that were in dispute, which also supports a returning to the lower court's ruling. As to the confidentiality, each material fact was also contested. In essence, Ms. Cofaso is the quintessential whistleblower that Congress wanted to bring a False Claims Act action. She was there when the government threatened to march in and take away Motorola's intellectual property for the exact types of actions that are alleged in this case. She would Well, let me just so procedurally I understand this. You have a motion on the pleadings, right? Yes. Regarding whether you can state a claim. Yes. And the court, how many times were you given leave to amend? There was a motion for judgment on the pleadings, which was filed. The court required Ms. Cofaso to file an amended complaint or she wouldn't ever have another opportunity. The court found that amended complaint too long and rejected it. That was the only time that there was another opportunity. All right. So it was like 733 pages or something along those lines, and the court basically said, I'm not, you know, I'm not going to find your cause of action here, right? Initially what happened was sua sponte, the court contacted the parties and said, this is too long. Ms. Cofaso sent the court a copy of the Hearn's decision of the Ninth Circuit that said, you can't reject an amendment because it's too long. And then he changed his mind and rejected it for another reason. Okay. And you were representing? I have a couple of questions for you, if I may. One is, doesn't Rule 8 put a limit on the size of pleadings? Because a pleading can't just be of unlimited length. And doesn't a court have discretion to reject a pleading that's just too wordy, too long? Doesn't Rule 8 say something about that? Your Honor, Rule 8 does not say anything about the length of a complaint. I believe the Hearn's case in the Ninth Circuit, which is binding precedent, directly addressed that issue as to whether or not Rule 8 could be used on simply the length of a complaint, and this Court rejected that. And that, I believe, is the current precedent in this Court. But to address the issue of Rule 8 and the length of the complaint, the lower court emphasized that it wanted a great deal of additional detail under Rule 9 and also required that the proposed Second Amendment complaint, the PSAC, meet Rule 10. There's a great recent decision in the Western District of Wyoming called NRA Natural Gas that says if you keep telling plaintiffs that they have to provide all this additional information, you're going to make really long complaints and they're going to be less manageable. That's the dilemma that the lower court created for itself and for the participants, and that court, NRA Natural Gas, cited an earlier decision, I believe in Texas, the Johnson case, where the court said if you're going to demand this type of detail under 9b in False Claims Act cases, you're going to get a phone book back. In our case, the relator was told that she was to file an amended complaint that answered this incredibly onerous set of interrogatories about the False Claims Act matters. The court said, I don't understand the documents, so you're going to need to include those. The court struck a lengthy MJOP response brief with a bunch of tables attached to it that showed all the detail, the contracts, met all of the 9b requirements. He struck that and said, you're going to need to put that in your pleading. In striking that, the court said, I believe that's about 1,000 pages worth of information. So rather than actually getting that same 1,000 pages back, he only got 733 back. But most importantly, when you try to meet Rule 9 and you try to meet Rule 10 as the judge had explained it to the parties, each invention, each of the 17 schemes and each of the subsets of the False Claims Act would have to have been a separate claim. That would have made over 4,000 different claims. The compromise that Relator tried to enter into was to simply make one claim per technology and include all the schemes and all the subparts of the False Claims Act in each one of those. If you took out... Thank you. Let me ask you another question just to make sure that at some point in your argument you cover this. Let's assume that the Relator pleaded and alleged that there was fraud in connection with a government contract. Let's say they say someone entered a contract and said they would tender intellectual property, but they didn't intend to, and that was a fraud. Is that kind of fraud sufficient under the False Claims Act, or do they have to show fraud in connection with a bill submitted requesting payment or fraud in some statement made to induce payment? Your Honor, I appreciate the question, but I want to point out that that is not a matter before the Court. There was no decision other than on Rule 9b about the False Claims Act allegations. But if I could, I would like to say two things about that. First off, the lower court was always confused about this case because the Court only understood claims under A1, which requires a claim to be submitted or cause to be submitted. The bulk of the allegations in this case are under A7, which does not require a claim to be submitted. This Court found that expressly in the Bourceau case, and it follows the Allison-Engin case in the Supreme Court, saying that A2 through A7 don't require claims. So no, it does not have to be fraud in conjunction with a claim. And particularly with regard to A7, which is a reverse false claim, it wouldn't make any sense because a reverse false claim doesn't actually have a claim. The reverse false claim says that they diminished the value of the property, they misled the government about the existence of the property or the ownership of the property. That's an A7 claim, and it does not require a, quote, unquote, false claim. In addition, even as to the A1 claims, this Court's decision in the Abed case and the Frazier case and the other circuits, in the First Circuit, Fifth Circuit, Seventh Circuit and Tenth Circuit, have all said that you don't have to specify what the claim is at the pleading level, and even this Court's one case on the A1 matter only, not A2 through A7, afflatoony, on summary judgment, not on pleadings only, and even the part that was quoted by C4 in this case says you don't have to have a claim, you can also have circumstantial evidence. So no, the fraud does not have to be tied to a claim, even in an A1, and the majority of this case was about A7. That's part of the problem with the lower court's decisions in general, because the lower court never understood the Allison-Engin case and the Borso case and how A7 and A4 and A3 and A2 were different from A1. As to a breach of contract claim. Well, I did want you to address that. Let's assume that what's alleged is breach of contract but not fraud. Does that come under the false claims act? Absolutely, Your Honor. I appreciate that question as well. The Senate report, the legislative history in 1986, when the Senate sat down to revise the False Claims Act, it said specifically, violations of contract terms, specifications, statutes, or regulations are the most common forms of false claims. Hendow in the Ninth Circuit quoted that from the Senate report. In the Vermont, Stevens-Vermont agency and the Wilkins case in the Eighth Circuit, they talk about how in the early days during the Civil War when you ordered horses and you got mules, it didn't have to have anything else. You just didn't get what you paid for. The Compton case, the Supreme Court in Borenstein said we ordered a certain type of radio tube, we got a different one. That's a false claim. The Compton case in the Sixth Circuit said we ordered inspected brake jeeps. We only got brake jeeps. That's a false claim. And the Arodex case that was cited by this Court in the Smith-Klein-Beacham case said that while you got a compatible type of good, it wasn't the good that was contracted for. That's a false claim. So, but I think the seminal case is National Wholesale, which is a Ninth Circuit precedent, which found that a breach of contract was actually a false claim. But again, that was not before the Court. I believe I'm done in the last five minutes. With this, I'm going to put my hand on the record for the balance for rebuttal. Thank you. Good morning, Your Honor. Good morning. May it please the Court, Mark Kisicki representing General Dynamics C-4 assistance Inc. Your Honor, we've heard a lot about what the judge did. It doesn't bear a lot of resemblance to his actual orders, and I'd encourage the Court to read those orders, which are very clear and concisely explain exactly what the nature and the standard is for articulating a claim under the False Claims Act in this circuit. The judge applied the law correctly, as a matter of fact. The judge relied on some of the very cases that counsel has just represented to you are the law of the circuit. And the judge reached the conclusion that based on this complaint, there was no FCA allegation adequately pled under Rule 9b. As a matter of fact, he held that her primary theory of fraud, which was the idea that inventions were created under this ATERP contract, the Advanced Telecommunication Information Distribution Research Program, and were sold back to the government, was so poorly pled that it could not even survive scrutiny under Rule 12. And that's because what this Court has held very recently in the Evid decision, and of course, Evid came after the judge's ruling, but it's entirely consistent with Judge Wake's ruling dismissing the complaint. What Evid said is a relator who comes to court and can't provide a particular false claim and details about that false claim can still proceed with the False Claims Act lawsuit if they are able to articulate and allege particular details of a scheme to submit false claims, along with reliable indicia that those claims were submitted. That is nowhere to be found in Cafasa's substitute amended complaint. As a matter of fact, the first complaint that she filed, Your Honors, was only six pages long, and she took six months after leaving GDC4S with 10 gigabytes of confidential documents and attorney-client privilege communications before she substituted a new complaint. Six months later, that was 29 pages long, and before GDC4S even had the opportunity to review it, Judge Wake told her in open court that it did not appear to comply with either Rule 8 or Rule 10. She chose not to amend her complaint at that point. And for two years, the judge tried to get her to articulate a theory of her case. The case proceeded to discovery. In discovery in September of 2007 and again in January of 2008, Judge Wake directed her to articulate the theories of her case. Counsel represented that Judge Wake only understood A-1 as a claim. Your Honors, that's because for two years, all that was alleged in the complaint was the language of A-1 and A-2. A-7 was never alleged in the complaint. And when counsel started talking about an A-7 claim, Judge Wake asked her to articulate those theories and to provide the evidence. She did not do that. So GDC4S served a single interrogatory, very straightforward, asking Cufasso to identify every subsection of 3729A that she contended that GDC4S had knowingly violated. And her response was straightforward, Your Honors. She said, Cufasso has not, quote, has not asserted a claim as alleged or identified in this interrogatory, end of quote. Upon receiving that response, Your Honor, and this was nearly two years into the litigation, GDC4S immediately moved for judgment on the pleadings and moved to stay this case, further discovery at least, until that motion was resolved. Judge Wake held a long hearing on that motion. And he told Cufasso in open court that GDC4S had made a substantial showing on its motion and that if she could address the pleading defects that had been noted in that motion, that she should submit a proposed amended complaint. And the defects that he noted in open court that had been addressed in the motion for judgment on the pleadings addressed every element of A-1, 2, 3, and 7 that she claims were at issue. Because contrary to counsel's representation, a mere breach of contract is not an FCA claim, Your Honors. This Court held early on in the Anton, the Hopper v. Anton case, that it is not the case that any breach of contract or violation of regulations or law or receipt of money from the government where one is not entitled to receive the money automatically gives rise to an FCA claim. The FCA is far narrower. It requires a false claim. That was the basis of what we litigated for two years until talk started being made about an A-7 claim, an interrogatory assert, to try and figure out what this A-7 claim is. The response is, we're not asserting any claim under 3729A at all. Judge Wake later held that that response could only be reasonably interpreted as a complete abandonment of Cufasso's FCA action. Nonetheless, in response to that interrogatory, JDC4S filed its motion. The judge gave Cufasso the opportunity to amend. She chose not to take it. She chose to stand on her complaint and instead tried to file a 57-page nonconforming opposition to the motion for judgment on the pleadings. The judge said, I'm not going to accept this. It doesn't comply with the rules.  The judge then decided, following the forbearance he had had for two years in this case, to file a conforming brief. And he advised her in writing this time that if she could address the defects noted in the motion for judgment on the pleadings, which she had in front of her, and which fundamentally said you have not identified a false claim, a false statement, or a false record anywhere in your complaint that GD either knowingly made or used to either get a false claim paid under A-1 or A-2 to have the government pay a false claim, or under A-7 to avoid a transfer of property to the government. That is a fundamental prerequisite of any FCA action. You have to have either a false claim, a false statement, or a false record. She has not alleged that. Her theory of fraud was based upon nondisclosures, but she never tied it to a false  And so, in this case, we have two submissions where either there was a representation of compliance with the contract, as this Court said in Hendow, and the district court considered Hendow, a decision that's only three years old. And I used Hendow in reaching its conclusion. But going back to the process of how we got to where we are, the district court gave FASO two weeks to amend that complaint and advised her in writing that if she could address any of the defects noted in the motion, that she should submit a proposed amended complaint. And she took the two weeks the judge had granted, and she submitted yet another nonconforming brief that contains over 500 pages of single-spaced argument as attachments, and at the same time submitted the 733-page, 5,770-paragraph proposed second amended complaint. It takes up three volumes of your excerpts of record, which we'll get to in a moment, but it's a very important document that Ms. Caffasso has filed. The judge immediately stopped the proceedings at that point and asked for a briefing on what should happen here in light of the complaint. The judge decided that he would entertain Caffasso's nonconforming opposition to the motion for judgment on the pleadings as a matter of fairness, but that he would not allow her leave to file that proposed second amended complaint. And his words speak volumes on that issue. He looked at the complaint, and he did not just say it's overly long. What he said was that it was impenetrable, that it egregiously violated the Federal rules of civil procedure, that it was wildly unreasonable, and these are all quotes, convoluted, repetitive, and of no value to the Court or general dynamics. Judge Wake also held that it sought to basically abrogate his prior order in the case that limited all future pleadings and discovery to the 37 inventions that had been listed in the substitute amended complaint. It was a clear order. He had entered it six months beforehand. Yet the new proposed amended complaint, which Judge Wake noted, was not an attempt to try and fix the problems in the motion for judgment on the pleadings by identifying a false claim or a false statement or a false record, but it was an attempt to dramatically expand the scope of this litigation by adding new schemes and new technologies in direct violation of an order he had issued. At that point, understandably, Judge Wake exercised his legitimate discretion applying all five factors that the Supreme Court in Foreman and this Court has held in Ledsinger can be considered by a district judge when they elect not to grant leave to amend the complaint. And he held, after judiciously considering all of those factors, that they all militated against granting Cofaso further leave to amend her complaint, that there was no reason for her delay for asserting these new claims and addressing, for the first time, two years into this litigation, all of these new facts and details which still don't state a claim, but that this was a woman who not only had been in a senior position of management at GDC for us for years and had full access to their records, but took with her 10 gigabytes of documents on her way out the door and had those to plumb for months before they filed their first amended complaint in September – I'm sorry, in November of 2006. – You were granted summary judgment on the – taking the material, right? – Yes, Your Honor. – And you were also granted summary judgment on the retaliation claim? – Correct, Your Honor. – What – did she – was it undisputed that some of the documents had nothing to do with anything? – Yes, Your Honor. – So is that alone enough to say that the summary judgment was properly granted? – Your Honor, that certainly is our position, but that's not a position that Judge Waite actually addressed. What he concluded was that the scope and egregious nature of her violation and the indiscriminate manner with which she had gone about to collect documents, looking at a file, and if a name in the file – and these are electronic documents – if a name in the file looked like it might be something that might be relevant to what she might want to find out about, that she would take everything in the folder and move it over and copy it and she walked out with it, and that there was no exercise of discretion. She took almost every single e-mail that she received or sent for five years of employment. And this is a woman who was involved with in-house and outside counsel prosecuting patents. There was no dispute as to what she did. The only question is, was there a privilege to do that? And clearly, the Court held there might be a privilege. But on the facts of this case, that privilege had been grossly violated, and therefore, it did not need to address what percentage of documents might be relevant, because there had been no effort by her initially to engage in any kind of discretion to find documents that might actually show fraud. Counsel, I've got a question, if I may. And this may be something that is not covered fully in the briefing, because it may have come up afterwards. But does the Supreme Court's Iqbal precedent requiring a plausible claim under Rule 8, does that have any bearing or relationship to this case and to the 9b requirement of pleading fraud with particularity? Yes, it does, Your Honor. As a matter of fact, both Twombly and Iqbal are relevant. In fact, if you look at the allegations in Twombly, where it was an antitrust conspiracy that was pled, and the plaintiffs sat back and they looked at what the behavior of the defendants at issue was, and they said, you know, this behavior is completely consistent with an illegal agreement in restraint of trade, and they alleged that based on this parallel behavior, that that was evidence that there was an agreement. And the Supreme Court said that's not enough. Alleging behavior that's consistent with the conspiracy or, as we would say, consistent with a False Claims Act violation is not enough. You have to allege under 9b the particular details of a scheme to submit fraudulent claims. Now, conceitedly, there does not have to be a particular claim. And this Court has resolved that issue in EBIT. But what it said is then you have to provide the particular details of a scheme to submit false claims. The only scheme, the only scheme that Ms. Cafasso has alleged in her complaint related to one disclosure that she claims on one invention, 4582, was delayed by GDC-4S until the last minute allowed under the contract. In order to get to a fraud, we've got to have something more. We need a certification under A-2 that's false, that GDC-4S was in full compliance with the contract, even if you assume that for some reason that delayed notice consistent with the contract terms was somehow false. But that's not alleged in the complaint. It never was. Under A-7, she has to show that there was a failure to transfer property along with a false certification or record or statement that was used. There is not one allegation in her substitute amended complaint of a false statement. She never says, GD falsely said X or GD falsely certified Y. And because of that, her pleading fails under Twombly and Iqbal because it simply fails to state a plausible claim. It states behavior that may be consistent with an FCA violation, as any breach of contract would be, but it misses the most crucial element, which is the false claim, record or statement. And Judge Wake understood that and he made it very clear in his orders that he was not saying a breach of contract would not rise to the level of a false claims act violation, but you needed something more. You need the fraud. And that CAFASO lacked. All right. Your time's expired, unless there's additional questions. No questions. All right. Thank you. Thank you. All right. We'll hear from the government. May it please the Court. Good morning. My name is Steve Frank for the United States. And there are a number of issues in this case, but we appear solely on defendant's counterclaim for breach of confidentiality. The government is only here to urge the Court in its consideration and in writing the opinion not to write too broadly here. Normally, I would be sitting at – on this side of the table because the government believes – When you're – for the record, you're pointing to appellant's side of the table. To the relator. The government generally supports the relator. And we pointed out in our brief extensively why it's very important that relators be able to collect information and provide it to the government when they have evidence of fraud. There's statutory requirements that they turn over any evidence of fraud that they have when they file their complaint. And we want to be able to encourage them to do that. And that's why we don't want the Court to write too broadly in stating in some way that confidentiality agreements trump the relator's rights and ability to investigate fraud. We think this case is the exception and – and a really – a unique exception. And we'd like to make that clear and hopefully the Court will make that clear in its opinion. Because in this case, there was no evidence drawing a connection between this 10 gigabytes of information that the relator downloaded and any allegation of fraud. The district court found that there was just wholesale copying of whatever was on her computer. The government believes that confidentiality agreements serve a purpose in certain circumstances, but that it should not trump the public interest in providing the government information as to fraud. So our view is that this – We don't want people to be able to contract to keep criminal or – Exactly. Or, you know, or – Exactly. – stealing from the government. Exactly. And the only reason that I'm here today is I don't want to see this Court's opinion cited in some brief in the future that says confidentiality agreements can override the interest in providing government information. I would just like the Court to be clear, if it's going to affirm, that it's only because the relator was unable to show any connection between what she downloaded and allegations of fraud that the confidentiality agreement in this unique case was enforced. All right. Does the panel have any questions of the government? No questions. Thank you very much. May I please the Court? I'm at a bit of a disadvantage because people are saying things that are just not found in the record or are disputed issues of fact. When the government and the defendants said that the lower court found things, it's true. The lower court weighed evidence and found a lot of things simply by adopting what the defendants said. This Court can't be – I don't have enough time to dispute everything that they've said, but what the Court found below was all disputed. For example, there was a question posed to opposing counsel as to whether or not it was undisputed that it was unrelated information. That is not true. There was an artful summarization of Ms. Cofaso's testimony which said that she didn't look at each and every document. It's true. She didn't look at each and every document. She was intimately familiar with the documents because they were from her computer. She checked the file folders to make sure that that was what she thought it was. She used a reasonable means to try to find the things that were related to her allegations. There was a case that I neglected to cite. I cited the district court case of Hoyt. There is a – there is a circuit court of appeals of that same case in the D.C.  It's, I believe, 518F3D61, and at 71 – 72 and 73, it talks – it reminds the district court, you're talking about laypeople. Laypeople don't know all the disputes about what is a false claim and what is relevant, and courts cannot impose that on them. My client acted reasonable. She never – she never copied a single document until she was instructed to by the army fraud investigator, and only – and then she only copied documents that she had access to. She only copied documents from her computer. She did not copy all the documents from her computer. The lower court simply grabbed the defendant's briefs and repeated them as though they were fact. They were all disputed, and in fact, if they were undisputed, it was actually in our favor, but that was ignored because – Counsel, I have to ask you a question. I've been trying to understand what you're saying this whole time, but you cited the case of Hearns when this circuit indicated that simply having the length of a brief is not sufficient grounds for dismissal or a complaint. That case involved a complaint for 68 pages. This was 773 pages, over 5,000 paragraphs. You're talking about now a download that she thought was reasonably calculated to give information. We're talking about 10 gigabytes, which is roughly 7 million pages of documents. How is that reasonable under the circumstance? It sounds like it's just a wholesale attempt to take everything, including the kitchen sink, throw it against the wall and hope that something sticks somewhere. Thank you, Your Honor. It's embarrassing, the lack of attention that the lower court paid to actually ferreting out any evidence on that. And so that is why it sounds like that. She went through a reasoned attempt to try to find things that were related to what a layman believed would be related to this case. That's the only evidence in this case. And as to the 10 gigabytes and the millions of pages, there were nine high school football games that her nephew did that were downloaded. She had ultrasounds that were hers that she downloaded. That's all part of that 10 gigabyte. Nobody went in to parse it out. You were her lawyer, right? Yes, ma'am. And you couldn't write or do a complaint less than 733 pages? Your Honor, this lower court started in the first hearing indicating to my client that he felt she was a document thief for what she had done. Subsequently, he would suggest to opposing counsel what they might argue, which they then, of course, adopted. We were at a point at that PSAC where we were afraid that hundreds of millions of dollars fraud on the government was about to go away if there wasn't detail to meet the court's requirement that they answer an interrogatory, that they explain all the documents that the court hadn't heard, and that they meet Rule 10. To address Judge England's question, this was a 69-page complaint. All the other pages are the Rule 10 requirement of dividing the claims up as the court had instructed. When the court came back and said, this is too long, the relator begged the court, please explain to us how you want this done, and we will rewrite it, or you can strike out the parts that are unintelligible. But if you read this complaint, it has an introduction. It tells you about what the 17 different schemes are. The question that Judge Gould was asking, what is this case about, is explained in that second, proposed second amended complaint. This Court's precedent is that if there is detail that could meet 9b, the relator should be allowed to file an amended complaint. That, at the very least, should be allowed in this case. Clearly, it's not the case. Counsel, if I could just ask you a question. I thought, and I might have my memory off by a word or two, but I thought Rule 8 required something like a short and plain statement of a claim. I don't know if you have that language in front of you now, of FRCP 8, but I thought it was something like what I've just said. And it's hard for me to see how a complaint that competes in length with war and peace would be satisfying Rule 8. Your Honor, Rule 8 says a short, plain statement. But that had not been raised by the lower court. Remember that when that was submitted, the lower court said you were supposed to take all those tables. And they were not arguments. They were citations of evidence and detail. All those tables are supposed to be in the PSAC. That was what happened. The court said you better give me details from the documents. That was what happened. The court said you need to do this PSAC as though you were answering an interrogatory giving all the information about these claims. That's why the PSAC was so long. It emphasized 9, it emphasized 10, it emphasized answering an interrogatory only after the PSAC was submitted did the court say now you haven't met Rule 8. Well, that's – your Honor is absolutely right about what Rule 8 says. The problem for the pleader is that the court kept saying more information under 9 and more claims under 10 and then came back and said, nope, you don't get another chance. It's Rule 8. It's not simple enough. Well, there is a – there is a golden mean there somewhere between 9 and 10 detail on one side and 8 on the other. We were never given the opportunity to have that explained to us what that means and a chance to answer that. We were told answer it like it's an interrogatory response, put that thousand pages of table in there and do it under a Rule 10 rubric where you're going to have 800 – I'm sorry, about 600 and some pages of just claims, claims that try to meet 9B. If you take that out, it's a 69-page complaint, most of which is simply explaining the scheme to defraud of which there were 17. Thank you. All right. If there are not any further questions of the panel, we've given you additional time and this will conclude argument. Thank you, Your Honor. This matter is submitted. Thank you.
judges: England, Gould, Callahan